ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
PATRICK BAXTER,

                              Petitioner,

               -against-

JAMES T. CONWAY, Superintendent,
Attica Correctional Facility,

                              Respondent.
-------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: 7/29/11

**REPORT AND
RECOMMENDATION**

07 Civ. 2759 (VB) (GAY)

TO THE HONORABLE VINCENT L. BRICCETTI, United States District Judge:

Petitioner Patrick Baxter ("Baxter" or "petitioner"), proceeding *pro se*, has filed a

writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, I

respectfully recommend that the Court deny the petition in its entirety.

## I. BACKGROUND

In 2000, Baxter was indicted in Westchester County on fifteen counts of murder

in the second degree. (Aff. in Opp'n to Pet. for Writ of Habeas Corpus at 3.)[1]

Specifically, petitioner was charged with three counts of intentional murder, three counts

of depraved indifference murder, and nine counts of felony murder. (Id.) These charges

stem from the death, rape, sodomy, and robbery of Michelle Walker ("Michelle" or

"Walker") and Lisa Gibbens ("Lisa" or "Gibbens") as well as the death, rape, and

sodomy of Patricia England ("Patricia" or "England"). (Id. at 3-6.) On May 9, 2002,

petitioner was convicted of three counts of intentional murder (one count as to each

---

[1] Hereinafter Aff. in Opp'n

1

victim) and nine counts of felony murder (three counts as to each victim). (Trial Tr. at 2818[2], 2829; Aff. in Opp'n at 11.) Following conviction, Baxter was sentenced to twenty-five years to life on each count. (Id.) In the aggregate petitioner received a sentence of seventy-five years to life. (Id.)

Baxter timely appealed the judgment of conviction to the Appellate Division, Second Department. (Id.) In his appeal petitioner claimed that: (1) there was insufficient evidence to prove that he sodomized, robbed, or murdered any of the victims; (2) the prosecution exercised a peremptory challenge in violation of the Equal Protection Clause; (3) defense counsel's cross-examination of a government witness was improperly curtailed; and (4) the trial judge erroneously refused to discharge a sworn juror. (Ex. A at 2.)[3] In a supplemental *pro se* brief, Baxter also argued that the trial court erred in allowing "three unrelated homicides to be tried in one trial." (Ex. C at 1.) On February 28, 2005, the Second Department unanimously affirmed Baxter's conviction. People v. Baxter, 789 N.Y.S.2d 916 (N.Y. App. Div. 2005). The New York Court of Appeals denied leave to appeal on June 17, 2005. People v. Baxter, 5 N.Y.3d 759 (N.Y. 2005).

On or about June 19, 2006, petitioner filed a N.Y. C.P.L. § 440.10 motion. (Ex. L at 1.) Baxter's motion sought to vacate his conviction on the following grounds: (1) the indictment was defective; (2) prosecutorial misconduct impaired the integrity of the grand jury proceeding; and (3) ineffective assistance of counsel. (Id. at 8-19.) By

---

[2] Hereinafter Tr.

[3] Hereinafter all citations to "Ex." unless otherwise noted, refer to exhibits attached to Respondent's Appendix.

Decision and Order dated August 28, 2006, the Supreme Court, Westchester County (Zambelli, J.) dismissed petitioner's motion. (Ex. N at 1.) The Second Department denied Baxter leave to appeal the Supreme Court's decision. (Ex. Q.)

On December 6, 2006, Baxter filed a writ of error *coram nobis*. (Ex. R at 1.) Petitioner argued that his appellate attorney was ineffective in failing to raise the issue of ineffective assistance of trial counsel on direct appeal. (Id. at 3.) By Decision and Order dated April 24, 2007, the Second Department dismissed petitioner's application. (Ex. T.) The New York Court of Appeals denied leave to appeal on August 30, 2007. People v. Baxter, 9 N.Y.3d 872 (N.Y. 2007).

On March 8, 2007, Baxter timely filed the instant petition for a writ of habeas corpus. Petitioner seeks relief on the following grounds: (1) the government failed to prove beyond a reasonable doubt that he robbed or murdered the victims; (2) the prosecution peremptorily struck a juror in violation of the Equal Protection Clause; (3) the trial judge erred in curtailing cross-examination of a government witness; (4) the trial court improperly refused to remove a sworn juror; (5) undue prejudice resulted from the joinder of three separate homicides in a single trial; (6) the prosecution was initiated via a defective indictment; (7) prosecutorial misconduct tainted the grand jury proceedings; (8) ineffective assistance of trial counsel; and (9) ineffective assistance of appellate counsel.

## II. PROCEDURAL DEFAULT

### (a) Standard

The independent and adequate state ground doctrine precludes habeas review where a state court decided a federal claim, "on a state law ground that is independent

3

of the federal question and adequate to support the judgement." Cotto v. Herbert, 331 F.3d 217, 238 (2d. Cir 2003)(quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)). See Jimenez v. Walker, 458 F.3d 130, 136 (2d Cir. 2006). State court decisions are based on *independent* state law grounds when they do not "fairly appear to rest on or to be interwoven with federal law." Id. at 138 n.5. See Coleman, 501 U.S. at 739. In assessing the basis of a state court's decision, federal courts consider: "(1) the face of the state court opinion, (2) whether the state court was aware of a procedural bar, and (3) the practice of state courts in similar circumstances." Jimenez, 458 F.3d at 139. However, a "plain statement" of reliance on a state law ground evinces an *independent* basis for a state court's decision. See Harris v. Reed, 489 U.S. 255, 261-63 (1989); Jimenez, 458 F.3d at 138.

Where a state court's decision rests on *independent* state law grounds, a habeas court must still consider whether these grounds are *adequate*. Id. A procedural rule is *adequate* if is "firmly established and regularly followed by the state in question." Monroe v. Kuhlman, 433 F.3d 236, 241 (2d Cir. 2006) (internal quotation and citation omitted). The adequacy of a state procedural bar must be examined in the context of "the specific circumstances presented in the case, an inquiry that includes an evaluation of the asserted state interest in applying the procedural rule in such circumstances." Cotto, 331 F.3d at 240. To this end, the Second Circuit has set forth the following "guideposts" for consideration.

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the

rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

Id. (quoting Lee v. Kemna, 534 U.S. 362, 381-85 (2002)).

The precepts embodied in the independent and adequate state ground doctrine apply to substantive laws as well as procedural rules. See Walker v. Martin, 131 S. Ct. 1120, 1127 (2011); Cotto, 331 F.3d at 238. Accordingly, state procedural default rules are generally recognized as independent and adequate grounds. See Harris, 489 U.S. at 262. As such, a petitioner can only overcome a state procedural default and obtain federal habeas review by showing, "cause for the default and actual prejudice as a result of the alleged violation of federal law, or . . . that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman 501 U.S. at 750.

(b) Ineffective Assistance Of Counsel

In his petition Baxter asserts that he was deprived of effective assistance of trial counsel. Specifically, petitioner contends that his counsel was deficient in failing to: (1) submit an adequate pre-trial motion to dismiss the indictment; (2) effectively advocate for severance of the charges in the indictment; (3) procure independent testing of the prosecution's DNA evidence; (4) challenge the seating of a partial juror; and (5) call Steven Kasler as a witness or introduce any of his statements into evidence. (Ex. L at 21-28.) These claims were raised for the first time in state court through a CPL § 440.10 motion. The Supreme Court, Westchester County ultimately held that Baxter's ineffective assistance of counsel claims were procedurally barred by N.Y. CPL §

440.10(2)(c)[4] because "sufficient facts appear[ed] in the record so that the issues now raised could have adequately been reviewed on direct appeal."(Ex. N at 2.)

From the face of its decision, the court relied on an *independent* state ground, § 440.10(2)(c), to dismiss Baxter's ineffective assistance of counsel claim. Since the judge's decision rested on an *independent* state ground, I must consider whether the procedural rule invoked was *adequate* to support the court's judgement. Where the basis of an ineffective assistance of counsel claim is well established in the trial record § 440.10(2)(c) provides an *adequate* state ground that precludes habeas review. Murden v. Artuz, 497 F.3d 178, 196 (2d Cir. 2007). See Sweet v. Bennett, 353 F.3d 135, 139-40 (2d Cir. 2003); Aparicio v. Artuz, 269 F.3d 78, 93 (2d Cir. 2001); Reyes v. Keane, 118 F.3d 136, 140 (2d Cir. 1997). However, where "sufficient facts do not appear on the record ... to have permitted adequate review of [an ineffective assistance claim] on direct appeal" § 440.10(2)(c) is not an *adequate* state ground. Murden, 497 F.3d at 196 (internal quotation and citations omitted).

(i) Adequate State Ground

In this case, Baxter contends that his counsel's pre-trial motion to dismiss the indictment was constitutionally infirm because it inadequately assailed the absence of evidence that the cause of England's death was homicide. (Ex. L at 22.) However, prior to trial, defense counsel submitted a motion to dismiss the indictment based on the

---

[4] CPL § 440.10(2)(c) provides that, "[t]he court must deny a motion to vacate a judgment when: Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him...."

6

prosecution's failure to present *prima facie* evidence of the crimes charged. (Ex. M at 12.) Accordingly, the pre-trial motion component of petitioner's ineffective assistance of counsel claim involves an issue that is well established in the trial record. See Alston v. Donnelly, 461 F. Supp. 2d 112, 124 (W.D.N.Y. 2006)(ineffective assistance of counsel based on pre-trial motion practice is a record based claim); Brooks v. Walker, No. 9:01-CV-760, 2006 WL 1875103, at *7-*8 (N.D.N.Y. July 3, 2006)(same). Likewise, Baxter's ineffective assistance claim predicated on counsel's failure to challenge a partial juror relates to a record based matter. (Ex. M at 15; Tr. 699-768.) See Minigan v. Donnelly, No. 01-CV-0026A, 2007 WL 542137, at *17-*18 (W.D.N.Y. Feb. 16, 2007)(failure to challenge prejudiced juror involves matters contained within the record). Accordingly, § 440.10(2)(c) serves as an *adequate* ground with respect to these claims.

Therefore, petitioner's ineffective assistance of counsel claims involving the inadequate motion to dismiss the indictment and juror partiality issues are procedurally barred. Baxter can only overcome this impediment if he can show: (1) cause for the default and actual prejudice; or (2) a fundamental miscarriage of justice. To establish cause for his procedural default, Baxter must demonstrate that some "objective factor external to the defense" prevented him from complying with § 440.10(2)(c). Clark v. Perez, 510 F.3d 382, 393 (2d Cir. 2008)(quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). Sufficient cause exists where: (1) the factual or legal basis for a claim was not reasonably available to counsel; (2) some interference by state officials' made compliance with the procedural rule impracticable; or (3) the procedural default is the result of ineffective assistance of counsel. See Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994).

7

Considering these factors in turn, Baxter, in his § 440.10 motion, admitted that the factual basis for his ineffective assistance of counsel claims were "reflected upon the face of the record." (Ex. L at 21.) Based on this statement and the actual record, the factual basis underlying the motion to dismiss and juror partiality claims were available to Baxter at the time he filed his direct appeal. As such, he could have raised these ineffective assistance of counsel claims on direct appeal as was required by § 440.10(2)(c). Next, Baxter has not nor could he argue that his noncompliance with § 440.10(2)(c) was caused by the government. Finally, as will be discussed in greater detail below, Baxter's appellate counsel was not ineffective in failing to raise the procedurally barred issues on direct appeal. Since Baxter has not established cause for his procedural default, I need not consider whether he was prejudiced. Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 127 (2d Cir.1995).

Nor can Baxter demonstrate that a fundamental miscarriage of justice will result if his procedurally barred ineffective assistance of counsel claims are not reviewed. To qualify for the miscarriage of justice exception, a petitioner must demonstrate their actual innocence. See Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002). "Actual innocence means factual innocence, not mere legal sufficiency." Id. (internal citations and quotations omitted).

As there is no evidence of actual innocence and no cause for procedural default, Baxter's claims that his counsel was deficient for submitting an inadequate motion to dismiss the indictment and failing to challenge the selection of a partial juror should be dismissed.

8

(ii) Inadequate State Ground

Turning to petitioner's remaining ineffective assistance of counsel arguments. The crux of petitioner's severance claim is that counsel failed to argue with sufficient specificity that Baxter, "had a strong need to refrain from testifying concerning the charges arising from one incident and important testimony concerning the second incident." (Ex. L at 22-23.) See N.Y. CPL § 200.20(3)(b). The trial record is completely devoid of any evidence or explanation regarding Baxter's purported need to testify in relation to certain allegations while remaining silent as to the other crimes. Therefore, the severance claim involves facts that are dehors of the record.[5]

Counsel's alleged failure to conduct independent DNA testing also involves an issue outside of the record and thus, was properly raised in Baxter's § 440.10 motion. See Powers v. Lord, 462 F. Supp. 2d 371, 378-79 (W.D.N.Y. 2006); Burton v. Phillips, No. 03-CV-4955, 2006 WL 2927832, at *7-*8 (E.D.N.Y. Oct. 12, 2006). Likewise, the claim that counsel was ineffective in electing not to call Steven Kasler as a witness is a matter dehors of the record. Bonilla v. Portuondo, No. 00Civ.2369, 2004 WL 350694, at *10 (S.D.N.Y. Feb. 26, 2004); Leake v. Senkowski, No. 01 Civ. 7559, 2004 WL 1464889, at *28 (S.D.N.Y. June 30, 2004).

Since the adequacy of the severance motion, the failure to conduct independent DNA testing, and the decision not to call a witness all involve matters outside of the record, § 440.10(2)(c) is not an *adequate* state ground that precludes review of these

_____

[5] Whether the severance claim is procedurally barred presents a close question. The New York State Court of Appeals has cautioned against gratuitously applying § 440.10(2)(c) in the ineffective assistance of counsel context. See People v. Brown, 382 N.E.2d 1149 (N.Y. 1978). Therefore, the dearth of federal or state cases applying § 440.10(2)(c) to the facts of petitioner's severance claim counsels against invoking a procedural bar.

9

claims. However, as will be discussed in greater detail below, petitioner has failed to establish that his trial counsel rendered ineffective assistance.

## III. STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides the relevant framework for analyzing petitioner's remaining claims. AEDPA imposes a deferential standard of review on federal courts considering habeas corpus claims that were previously adjudicated on the merits in state court. Pursuant to the statute a federal court may only vacate a state conviction if it was either: (1)"contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

Since the petitioner does not assert that his conviction was based on an unreasonable determination of the facts, I need only consider the provisions of § 2254(d)(1). Under § 2254(d)(1) a state court's decision is "contrary to" clearly established federal law if: (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme Court of the United States] on a question of law"; or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that reached by the Supreme Court of the United States]." Williams v. Taylor, 529 U.S. 362, 405 (2000).

As to the "unreasonable application" prong of § 2254(d)(1), "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law

10

erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A state court's decision involves an "unreasonable application" of Supreme Court precedent if (1) "the state court identifies the correct governing legal rule from [Federal Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or (2) "the state court either unreasonably extends a legal principle from [Federal Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407.

## IV. ANALYSIS

### (a) Sufficiency Of The Evidence

In his petition, Baxter argues that the prosecution failed to "prove beyond a reasonable doubt ... that *he* murdered the victims." (Pet. at 5)(emphasis added). Likewise, petitioner contends that the evidence was insufficient to prove that he perpetrated the Walker or Gibbens robberies. (Id.) I will consider each of these claims below.

### (i) Standard

A petitioner challenging the sufficiency of the evidence underlying their conviction "bears a heavy burden." United States v. Aguilar, 585 F.3d 652, 656 (2d. Cir 2009). Courts will not disturb a jury's verdict "if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Farhane, 634 F.3d 127, 144 (2d Cir. 2011)(quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). In applying this standard, the evidence adduced at trial is assessed in the light most favorable to the prosecution. See Fama v. Comm'r of Corr. Servs., 235 F.3d 804,

11

811 (2d Cir. 2000)(citing Jackson, 443 U.S. at 319). Habeas courts must also defer to the jury's assessments of the weight of the evidence and credibility of the witnesses. Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996). In sum, relief is only available where no rational trier of fact could have found proof of guilt beyond a reasonable doubt. Policano v. Herbert, 507 F.3d 111, 115-16 (2d Cir. 2007).

     (ii) Michelle Walker

     (1) Murder

     The evidence adduced at trial established that on June 5, 1987, Michelle Walker disappeared after purchasing groceries from the Chalet Deli. (Tr. 1008, 1026, 1029.) According to the deli clerk, Walker arrived at the store between 5:00pm and 5:15pm. (Tr. 1027.) Approximately six minutes later she exited Chalet Deli. (Tr. 1028-29.) After leaving Chalet, Michelle set out on a dirt trail that linked the deli and the Walker residence. (Tr. 1007-08, 1029.) Around dusk or early evening, some of the groceries Michelle had purchased were discovered on the dirt path that ran between Chalet Deli and Walker's apartment. (Tr. 1141-42.) The trail where Michelle was last seen and her abandoned groceries located ran behind Baxter's apartment. (Tr. 1059, 1139, 1142-43, 1848-49.) Petitioner had a history of exiting his apartment via a window that overlooked the path at issue. (Tr. 1654-55.)

     On June 6, 1987, Michelle Walker's body was discovered in the woods abutting the dirt trail where she was last seen alive. (Tr. 1034-36, 1058-59.) Her final resting place was 746 feet from the back of Baxter's apartment. (Tr. 1076.) At the time of discovery Walker was lying on her back with her sweater inside-out and her breasts

12

exposed. (Tr. 1164, 1238.) Michelle's tank top was found near her body along with her shoes, a bloody tampon, and the top of a Vaseline jar. (Tr. 1057, 1164,1238.)

An autopsy conducted by the Westchester County Medical Examiner's Office ("M.E.") revealed that Michelle suffered blunt force trauma to her face prior to death. (Tr. 1242-43.) However, the cause of Walker's death was ultimately identified as mechanical asphyxiation. (Tr. 1245.) At trial, the M.E. testified that his findings from the autopsy comported with the prosecution's theory that Walker died between 5:00pm and 6:00pm on June 5. (Tr. 1241.) The Medical Examiner also opined that Michelle Walker was lying on her back from the time of death until her body was discovered. (Tr. 1262-63.)

The physical evidence in this case was analyzed by a team of forensic scientists. DNA testing revealed the presence of petitioner's semen on Walker's panties, sweater, and tank top. (Tr. 1509-11.) Baxter's semen was also detected on a rectal swab obtained from Michelle during her autopsy. (Tr. 1510.) However, the tampon found at the crime scene was devoid of petitioner's DNA. (Tr. 1509-10, 2113.) At trial, a scientist explained that the absence of semen on the tampon was significant because it indicated that Baxter ejaculated in Walker at the same location that she was murdered. (Tr. 2112-13.) A different scientist opined that the contours as well as presence of green stains on Walker's shoes suggested that she was forcibly dragged into the woods. (Tr. 1383,1431.)

Viewing this evidence in the light most favorable to the prosecution, a rational juror could have concluded beyond a reasonable doubt that Baxter caused the death of Michelle Walker. The condition of the body, the items recovered from the crime scene,

13

and the presence of semen reveal that Walker was sexually assaulted by Baxter.[6] The forensic evidence, including the tampon and physical condition of the body, demonstrate that the sexual assault occurred in the same location, 746 feet from Baxter's apartment, where Michelle was murdered. As such, the presence of petitioner's semen in and on Walker is highly probative of his culpability in the murder.

The testimony further establishes that Baxter's sexual assault took place between 5:00pm, when Walker was last seen alive, and 6:00pm, her time of death. Given this timing, it strains credulity that in the course of one hour Walker was sexually assaulted by Baxter and thereafter murdered by some unknown third party. See Loliscio v. Goord, 263 F.3d 178, 190-91 (2d Cir. 2001)(reasonable for jury to reject defense's theory that in the span of an hour and a half, petitioner had sex with victim and thereafter a different individual committed the charged homicide); People v. Loliscio, 593 N.Y.S.2d 991, 994-95 (N.Y. App. Div. 1993)(timing of victim's death was strong evidence defendant committed homicide).

(2) Robbery

On the morning of her death, Michelle Walker's father provided her with $60.00 to attend a fair. (Tr. 992-93.) Later in the day Michelle received $20.00 from her mother to purchase groceries from Chalet Deli. (Tr. 1006.) The items Michelle purchased on the evening of her death cost approximately $14.00. (Tr. 1021, 1029.) When Michelle was found she was in possession of ¢.12. (Tr. 1269.)

---

[6] Petitioner does not nor could he reasonably deny that he sexually assaulted Walker.

14

Baxter's contention that the evidence was insufficient to support his conviction for robbery presents a closer question. However, AEDPA's deferential standard necessitates the rejection of petitioner's sufficiency claim. The evidence established that prior to death Michelle was in possession of approximately $80.00. However, at the time her body was discovered all but a nominal amount of Walker's money was missing. Given the evidence linking Baxter to the scene of the rape and murder, a reasonable juror could have also concluded that petitioner stole Walker's money. Accordingly, the Second Department's rejection of petitioner's sufficiency of the evidence claim relating to Michelle Walker was not an unreasonable application of Supreme Court precedent.

(iii) <u>Patricia England</u>

On New Year's Day 1988, Patricia England disappeared while searching for her estranged boyfriend Randy DiCarlo. (Tr. 1563, 1572-73, 1578, 1580.) Approximately one month later, England's decomposed body was discovered in a wooded area abutting Sprain Road in Greenburgh, New York. (Tr. 1218,1633-34, 1723.) Baxter, who was friends with England, was familiar with this "very desolate" and "very infrequently traveled" area. (Tr. 1650-51, 1655-56, 1724-25.) At the time of discovery, England was naked from the waist up. (Tr. 1270, 1635.) Patricia's shirt, sweater, and denim jacket were located near her body. (Tr. 1219.)

The ensuing autopsy revealed bruising and abrasions on Patricia England's face. (Tr. 1272.) However, due to decomposition there was insufficient evidence to ascertain a definitive cause of death. (Tr. 1272-73.) Accordingly, the cause of death, in 1988, was classified as undetermined. (Tr. 1273.) During the autopsy, the M.E. also obtained oral, vaginal, and rectal samples from England's body. (Tr. 1275-76.)

15

In 2000, forensic analysis of the oral, vaginal, and rectal samples uncovered the presence of Baxter's semen. (Tr. 1610, 1615.) The discovery of semen in England's mouth revealed that she was orally sodomized no more than two hours prior to death. (Tr. 1412-14, 1615-16.) Patricia's pants and panties, which were retained by investigators, also tested positive for petitioner's DNA. (Tr. 1604, 1610, 1621.) In 2000, based on the totality of evidence, the Westchester M.E. reclassified England's death as a homicide caused by asphyxiation. (Tr. 1277.) As part of his revised findings, the M.E. opined that England was killed in one location and then deposited along Sprain Road. (Tr. 1278.)

Viewing the evidence in the light most favorable to the prosecution, a reasonable juror could have concluded that Baxter murdered Patricia England. The condition and location of the body coupled with the presence of semen indicates that England was sexually assaulted. The discovery of Baxter's semen in Patricia's mouth, vagina and anus identifies him as the perpetrator of the sexual assault.[7] Furthermore, the sperm in Patricia's mouth establishes that Baxter assaulted England no more than two hours before her death.

Like the Michelle Walker case, it strains credulity that Baxter raped England and then in the ensuing two hours a third party killed Patricia and thereafter deposited her body along Sprain Road. See Loliscio, 263 F.3d at 190-91. The location of England's body is also probative of petitioner's guilt. England was discovered along a "very desolate" road that was "very infrequently traveled." However, the trial testimony

---

[7] In his petition Baxter does not deny sexually assaulting England.

16

revealed that Baxter was intimately familiar with this area. Based on the foregoing evidence, the Second Department did not unreasonably reject Baxter's sufficiency of the evidence claim relating to Patricia England.

     (iv) <u>Lisa Gibbens</u>

     In 1990, Lisa Gibbens lived in the Consulate Apartments in Tuckahoe, New York. (Tr. 1749-50.) The rear entrance of her building connected to a pathway that led to the Crestwood train station. (Tr. 1736, 1752-53.) Baxter who frequented the playing fields behind the Consulate was familiar with the area. (Tr. 1850-52.) On July 17, 1990, at approximately 9:00am Lisa's body was discovered in the woods along the trail leading to the Crestwood train station. (Tr. 1735-37.) At the time of discovery, Gibbens had suffered major head trauma and was naked below the waist. (Tr. 1737, 1782, 1784-85.) While processing the scene, the police recovered a shotgun shell but failed to locate Gibbens' clutch billfold. (Tr. 1757-58, 1793-94.)

     On July 18, the day after the murder, Lisa's credit card was located on the corner of Hammersley Avenue in the Bronx. (Tr. 1855-57.) In 1990, Baxter and his cousin, Paul Williams, lived four blocks away from Hammersley Avenue at 3314 Fisher Avenue. (Tr. 1861, 1881.) During the time he resided at Fisher Avenue, Baxter owned a sawed off shotgun. (Tr. 1871.) Sometime after Lisa's death, Williams observed a shotgun and Gibbens' clutch billfold in Baxter's room. (Tr. 1882-83.) When confronted by Williams, Baxter explained that he "went to rob a lady and that he took her pocketbook and she didn't have any money and he fired a round in the air, because she didn't want to give the pocketbook up." (Tr. 1883.)

As part of the investigation into the murder, an autopsy was performed on Lisa Gibbens. (Tr. 1970.) The cause of Lisa's death was identified as a single gunshot wound to the head. (Tr. 1972.) During his examination the M.E. also collected oral, rectal, and vaginal swabs from Gibbens. (Tr. 1978.) In 1999, DNA analysis was performed on these swabs. (Tr. 2280.) The results ultimately revealed the presence of Baxter's DNA on the rectal and vaginal samples. (Tr. 2284-85.) In addition, petitioner's DNA was discovered on the dress Lisa was wearing the day she died. (Tr. 2290.)

Viewing this evidence in the light most favorable to the prosecution, any juror could have concluded beyond a reasonable doubt that Baxter murdered and robbed Lisa Gibbens. The evidence of Baxter's guilt is overwhelming. Petitioner frequently "hung out" in the area where Gibbens was killed. His DNA was discovered on Lisa's body and clothes. Baxter also owned a shotgun, the same type of weapon that was used in the murder. In addition, a shotgun and Lisa's wallet were discovered in Baxter's room after the murder. Petitioner even admitted robbing a woman using a shotgun. The discovery of Gibbens' credit card several blocks from Baxter's apartment further connects him to the murder and robbery. Accordingly, it was not unreasonable for the Second Department to reject petitioner's sufficiency of the evidence claim relating to Lisa Gibbens.

(b) Batson Claim

Next, Baxter asserts that the prosecution peremptorily struck a prospective African- American juror, Dr. Francois Parisien, in violation of Batson v. Kentucky, 476

18

U.S. 79 (1986).[8] As an initial matter, the Second Department rejected this claim as unpreserved and in any event without merit. Baxter, 789 N.Y.S.2d at 916. I forego considering the independent and adequate state ground issue as the underlying Batson claim is easily resolved against Baxter. See Dunham, 313 F.3d at 729-30 (permissible to proceed directly to merits of petition where underlying issues are easily resolvable against petitioner); Garraway v. Phillips, 591 F.3d 72, 75 (2d Cir. 2010).

In Batson, the Supreme Court prohibited the government from exercising peremptory challenges based on a prospective juror's race. See Batson, 476 U.S. at 89; United States v. Martinez, 621 F.3d 101, 106 (2d Cir. 2010). The Batson Court also promulgated a tripartite framework for assessing whether the prosecution exercised a peremptory challenge in an impermissible fashion. See Johnson v. California, 545 U.S. 162, 168 (2005). Under this three step analysis:

> [a] defendant must [first] make a prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

Farhane, 634 F.3d at 154-55 (quoting Snyder v. Louisiana, 552 U.S. 472, 476-77 (2008)).

---

[8] Baxter's petition tersely claims that the prosecution "exercised peremptory challenges to remove African-Americans from the jury panel." (Pet. at 5.) This language is identical to the heading of "Point 2" of petitioner's appellate brief to the Second Department. (Ex. A at 23.) Baxter's habeas petition also explicitly incorporates the analysis contained in "Point 2" of his appellate brief. (Pet. at 5.) However, "Point 2's" arguments focus on the removal of Dr. Parisien. (Ex. A at 30-35.) As such, this Court, like the Second Department, construes Baxter's petition as simply challenging the prosecution's peremptory strike on Dr. Parisien. See Baxter, 789 N.Y.S.2d at 916. This interpretation is buttressed by the petitioner's Traverse in which he incorporates his request for leave to appeal to the New York State Court of Appeals. In his motion for leave to appeal, Baxter only asserted a Batson challenge to the removal of Dr. Parisien. (Ex. H at 5-10.) Thus, petitioner's Traverse affirms that his Batson claim is limited to Dr. Parisien.

A timely objection is a necessary prerequisite for vindicating <u>Batson</u> rights. <u>See</u> <u>Garraway</u>, 591 F.3d at 75 (citing <u>McCrory v. Henderson</u>, 82 F.3d 1243, 1247 (2d Cir. 1996)). In this vein, a defendant must challenge a prosecutor's purportedly discriminatory peremptory strike prior to the conclusion of jury selection. <u>See</u> <u>id</u>. at 1249. As a matter of federal constitutional law, the failure to raise such an objection forfeits any future <u>Batson</u> based claim. <u>See</u> <u>id</u>. ("[T]he failure to object to the discriminatory use of peremptory challenges prior to the conclusion of jury selection waives the objection."); <u>Garraway</u>, 591 F.3d at 76 n.2.

In this case, the venireman at issue, Dr. Francois Parisien, was struck without objection from defense counsel during the first round of jury selection. (Tr. 277.) Several days later the prosecution exercised a peremptory strike against Theresa Reavis, an African-American female. (Tr. 759.) Defense counsel promptly raised a <u>Batson</u> challenge stating "[w]ith regards to Ms. Reavis, I'm going to make an application. It's another black person that's not on the jury . . . . I would like to know the prosecution's reason for keeping *her* off the panel." (<u>Id</u>.)(emphasis added.) Though the court did not find a *prima facie* case of discrimination, the prosecution was instructed to proffer a race neutral explanation for its challenge. (<u>Id</u>.) The defense did not object to the prosecutor's race neutral justification. (Tr. 760.)

In close succession to the Reavis challenge, the prosecution struck prospective juror Andrea Scarlett, an African-American female. (Tr. 766.) Defense counsel objected arguing, "it's another black person that's being excluded from the jury and I would like a race neutral explanation." (<u>Id</u>.) In response to the defense's objection, the government

offered a race neutral justification for its strike. (Id.) The defendant failed to object to the prosecution's explanation. (Tr. 767.)

The following day, the trial judge *sua sponte* determined that the defense had established a *prima facie* case of discrimination under Batson. (Tr. 772.) In substance the judge held:

> "Yesterday I had indicated that it was just data and I wasn't finding you [defendant] made out a prima facie case. I'm now saying, as I review all of this, in line with the explanation the People offered, which was they didn't want people who hadn't had long employment, etcetra on the jury, as I reviewed their challenges, first challenge that they exercised was against a physician. I don't know how you get more stable in a community than a physician. So, weighing all of those factors, I determine that you [defense] did make out a prima facie case, which means that they [prosecution] then have to give a race neutral explanation, which I accepted on their part and now I'm starting to waiver on that, but any way I want you [defense] to know." (Tr. 776.)

Even at this juncture defense counsel remained silent regarding the prosecution's strike on Dr. Parisien. (Id.)

The first time the defense demonstrated the slightest inclination to challenge the removal of Dr. Parisien was as sentencing. (Sentencing Tr. 2-5.[9]) At sentencing, the trial judge granted the prosecution's request to "complete" the record. (S. 2.) In completing the record the prosecutor set forth a race neutral explanation for striking Dr. Parisien. (S. 2-4.) In response to the prosecution's proffer, defense counsel stated, "I don't really accept that as a legitimate reason for why Mr. Parisian [*sic*] was removed or was rejected from the jury panel and that is all I have to say about that." (S. 5.)

---

[9] Hereinafter S.

As the record reveals, defense counsel failed to raise a <u>Baston</u> objection to the removal of Dr. Parisien prior to the conclusion of jury selection. Thus, as a matter of federal constitutional law Baxter is foreclosed from, now, asserting a <u>Batson</u> challenge to the prosecution's peremptory strike on Dr. Parisien. <u>See</u> <u>Garraway</u>, 591 F.3d at 76; <u>McCrory</u>, 82 F.3d at 1249; <u>Sorto v. Herbert</u>, 364 F. Supp. 2d 240, 251-52 (E.D.N.Y. 2004). Accordingly, I respectfully recommend the dismissal of petitioner's <u>Batson</u> claim.

(c) <u>Refusal To Dismiss A Sworn Juror</u>

Baxter also challenges the trial judge's failure to dismiss a sitting juror. (Pet. at 5.) During the course of the trial juror James Langhenning informed the court that he worked with the brother of a prosecution witness. (Tr. 1253.) The witness at issue was Sergeant Richard Conroy, the first Greenburgh police officer to arrive at the scene of the England homicide. (Tr. 1215, 1218.) When questioned by defense counsel, Langhenning explained that had never met the Sergeant or discussed the case with Conroy's brother. (Tr. 1253-54.) Juror Langhenning also assured the judge that his relationship with Sergeant's Conroy's brother would in no "way influence [him] in deciding the facts of [the] case." (Tr. 1253.) Based on this colloquy the trial judge denied defense counsel's motion to dismiss Langhenning from the jury. (Tr. 1257-58.) Baxter contends that the trial court's decision violated the Sixth and Fourteenth Amendments.[10]

---

[10] To the extent that petitioner is arguing that the trial court incorrectly applied New York law in assessing Mr. Langhenning's fitness as a juror, his claim is not cognizable on habeas review. (Pet. at 5)(citing Ex. A.) <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 68 (1991)("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

Petitioner's assertion that he was denied his Sixth Amendment right to have a "voice in jury selection" fails to identify a cognizable federal constitutional issue. (See Pet. at 5.) Baxter appears to have conflated federal and New York state law. Article I § 2 of the New York State constitution guarantees a defendant a "voice in jury selection." See People v. Buford, 69 N.Y.2d 290, 297-98 (N.Y. 1987). This same right is not conferred on a defendant by federal law. See Mackensy v. Miller, No. 00 Civ. 9296, 2010 WL 101321, at *8 (S.D.N.Y. Jan. 12, 2010)("The argument that petitioner . . . was denied a trial by a jury in whose selection he had a voice echoes the New York State Constitution, not federal law."). Thus, Baxter's "voice in jury selection" claim sounds in state law. This Court will not grant habeas relief based on a violation of state law. See Estelle v. McGuire, 502 U.S. 62, 68 (1991)("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

As to petitioner's Fourteenth Amendment claim, the Supreme Court has held that, "due process does not require a new trial every time a juror has been placed in a potentially compromising situation." Smith v. Phillips, 455 U.S. 209, 217 (1982). Rather, due process simply guarantees a defendant the right to a jury that is "capable and willing to decide the case solely on the evidence before it." Id. Assessments of a juror's impartiality are entrusted to the sound discretion of the trial court. Fama, 235 F.3d at 813. Accordingly, a trial judge's determination of juror impartiality is entitled to a presumption of correctness. Id. See Skilling v. United States, 130 S. Ct. 2896, 2923 (2010)(deference due to the trial judge's determinations of partiality is at its pinnacle).

In this case, Baxter cannot overcome the presumption that the trial court's refusal to dismiss Langhenning was a sound exercise of discretion. When queried, juror

23

Langhenning definitively stated that his relationship with Sergeant Conroy's brother would not effect his evaluation of the evidence. There is no reason to doubt Langhenning's assertion as he did not have a personal relationship with the Sergeant and had never discussed the case with Conroy's brother. Therefore, the Second Department did not unreasonable deny Baxter's claim. See Devison v. Cunningham, No. 09 Civ. 1031, 2010 WL 5060789, at *17 (S.D.N.Y. Oct. 15, 2010).

     (d) Prejudicial Joinder

     Baxter next asserts that the he was denied a fair trial because he was unduly prejudiced by the joinder of three homicides in a single indictment. (Pet. at 6.) The purported prejudice stems from the likelihood that the jury, based on a cumulative evaluation of the evidence, convicted petitioner on all counts of the indictment. (Ex. C at 2). Baxter also claims that joinder prevented him from testifying in relation to some charges while remaining silent as to the other allegations. (Id.)

     The joinder of offenses is only unconstitutional when "it actually render[ed] petitioner's state trial fundamentally unfair and hence, violative of due process." Herring v. Meachum, 11 F.3d 374, 377 (2d Cir. 1993)(internal quotations and citations omitted). The key to an improper joinder claim is *actual* prejudice. Thus, to successfully demonstrate a violation of due process the petitioner must, "go beyond the potential for prejudice and prove that actual prejudice resulted from the events as they unfolded during the joint trial." Id. at 377-78.

     Petitioner has not demonstrated that he suffered actual prejudice as a result of the jury's cumulative evaluation of the evidence. In his charge, the trial judge instructed the jury that they were "to consider each of the crimes separately and individually and

ascertain whether or not the evidence has proved the actual elements as beyond a reasonable doubt." (Tr. 2748-49.) As juries are presumed to have followed the judge's instructions, Baxter cannot demonstrate actual prejudice "unless there [was] an overwhelming probability that the jury [would] be unable to follow the court's instructions . . . ." Herring, 11 F.3d at 378. See Rolling v. Fischer, 433 F. Supp. 2d 336, 344-45 (S.D.N.Y. 2006)(when the court instructs the jury to consider evidence supporting each charged crime on an individual basis, petitioner cannot prove that he was actually prejudiced by joinder of the charges); Oliveira v. Phillips, No. 05 Civ. 564, 2007 WL 2890211, at *9 (S.D.N.Y. Sept. 28, 2007)(same).

Here, petitioner cannot show an overwhelming probability that the jury failed to follow the court's instructions. During deliberations the jury requested copies of the judge's instructions, a list of the witnesses who testified, rereading of certain testimony, copies of the DNA tests, and a host of other evidence. (Tr. 2796-97, 2800, 2806.) Said jury requests soundly refute any argument that they were unable to follow the trial judge's instructions. See Herring, 11 F.3d at 378 (during deliberations requests for evidence negate claims that there was an overwhelming probability that the jury was unable to follow judge's instructions); Harris v. Burge, No. 04 Civ. 5066, 2007 WL 4145413, at *9 (S.D.N.Y. Oct. 29, 2007)(same). Thus, the petitioner has failed to demonstrate that he suffered actual prejudice from the jury's cumulative evaluation of the evidence.

Similarly, Baxter has not demonstrated, that as a result of a joint trial, he was prejudiced by his inability to testify as to certain counts of the indictment while remaining silent as to the other charges. The Second Circuit has recognized that prejudice from

25

the joinder of claims can arise where the "accused wishes to testify on one but not the other of two joined offenses." United States v. Sampson, 385 F.3d 183, 191 (2d Cir. 2004). See Oliveira, 2007 WL 2890211, at *7. However, "a mere unexplicated assertion of the desire to testify on only one count" of an indictment fails to evince actual prejudice. Sampson, 385 F.3d at 191. Baxter has not proffered any explanation as to how he would have testified or why he could not give such testimony in a joint trial. Accordingly, petitioner cannot show that he was actually prejudiced by the joinder of three separate homicides in a single indictment. See id. at 191-92.

For the foregoing reasons, the Second Department reasonably rejected Baxter's joinder claim.

(e) Limitation On Cross-Examination

In his petition, Baxter also claims that the trial court improperly curtailed the defense's cross-examination of a government witness. (Pet. at 5.) At trial, the prosecution called Robert Adamo, a forensic scientist employed by the Westchester County Laboratory, as a witness. (Tr. 2084.) On direct examination Adamo testified that a hair was recovered from Lisa Gibbens' hand. (Tr. 2119-20.) This evidence was submitted to the Federal Bureau of Investigation ("FBI" or "Bureau") for a comparison to hair obtained from two potential suspects. (Tr. 2120.) The FBI concluded that the hair did not match either of the suspects. (Id.) During cross-examination defense counsel delved deeper into the hair issue. (Tr. 2123-26.) Counsel elicited admissions from Adamo that he relied on and trusted the FBI's hair analysis. (Tr. 2123, 2125.) Based on these responses, the defense sought to question Adamo about an FBI psychological profile that theorized that Gibbens' assailant was a white male. (Tr. 2127-29.)

26

The trial judge precluded this line of questioning. (Tr. 2131.) In reaching this conclusion, the court noted that the hair in Gibbens' hand was one of the many factors considered in the development of the FBI's profile. (Tr. 2130.) Thus, the profile "went past what [Adamo] said" and had "no effect on his opinion with respect to the FBI and hair." (Tr. 2130, 2131.) Baxter claims that this ruling violated his rights under the Sixth Amendment's Confrontation Clause.

The Sixth Amendment "guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense may wish." Delaware v. Fensterer, 474 U.S. 15, 20 (1985). The Confrontation Clause is violated when a petitioner is "prohibited from engaging in otherwise appropriate cross-examination designed to expose to the jury the facts from which jurors could appropriately draw inferences relating to the reliability of the witness." Cotto, 331 F.3d at 249 (quoting Delaware v. Van Arsdall, 475 U.S. 673, 680 (1986)(internal quotation marks omitted)).

Nevertheless, trial judges still retain substantial discretion to "impose reasonable limits on [ ] cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety or interrogation that is repetitive or only marginally relevant." Van Arsdall, 475 U.S. at 679. Given this latitude, a petitioner's Confrontation Clause rights are unlikely to be violated by the application of traditional rules of evidence. See Munoz v. Barkley, No. 02 Civ. 8075, 2003 WL 21373349, at * 2 (S.D.N.Y. June 12, 2003). This is especially true where the evidentiary rule invoked is designed to "prevent the introduction, in the guise of cross-examination, of hearsay or opinion evidence not otherwise admissible." Id. In the event

that the trial court improperly curtailed cross-examination, a petitioner's claim is still subject to a harmless error analysis. Van Arsdall, 475 U.S. at 684.

In this case, the trial court imposed a reasonable limitation on defense counsel's cross-examination of Adamo. The defense sought to question Adamo about the psychological profile in order to probe his reliance on reports produced by the FBI. (Tr. 2129.) Specifically, defense counsel wanted Adamo to reconcile his trust in the FBI's reports with the Bureau's profile that concluded that Gibbens' assailant was a white male. (Id.) Baxter's attorney argued that this line of questioning was appropriate given Adamo's purported admission that he relied on and trusted any report developed by the FBI. (Id.)

However, on cross-examination Adamo never claimed that he accepted and relied on all FBI reports regardless of their content. (Tr. 2123-26.) Rather, he testified that he trusted and relied on FBI reports pertaining to the forensic analysis of hair. (Tr. 2125-26.) The conclusion reached in the profile at issue was derived from the synthesis of an amalgamation of factors rather than the forensic analysis of hair. (Tr. 2130, 2554.) Therefore, as was recognized by the trial court, the psychological profile was not probative of Adamo's trust in the FBI's reports or hair analysis capabilities.

Similarly, since the profile was not developed through the forensic analysis of hair, it went beyond the scope of direct examination. Accordingly, the decision to limit cross-examination on a matter that was not germane to the witness's testimony and that went beyond the scope of direct examination did not violate the Confrontation Clause. Van Arsdall, 475 U.S. at 679 (trial court retains discretion to impose reasonable limitations on cross-examination); United States v. Adeniyi, No.03CR86, 2004 WL

28

1077963, at \*2-\*4 (S.D.N.Y. May 12, 2004)(limiting cross-examination on matters that were outside the scope of direct examination does not violate Confrontation Clause).

Moreover, the trial judge subsequently explained that cross-examination of Adamo was also limited because the FBI profile was hearsay. (Tr. 2552, 2555-56.) Defense counsel tacitly conceded this point and admitted that he failed to lay an adequate foundation for the business record exception to the hearsay rule. (Tr. 2553.) As such, the decision to limit questioning on the FBI profile simply precluded the introduction of hearsay evidence under the guise of cross-examination. Therefore, the trial judge's ruling did not offend the Confrontation Clause. Buie v. Phillips, No. 06-4119-PR, 2008 WL 4726285, at \*2 (2d Cir. Oct. 29, 2008)(finding no Confrontation Clause violation where trial judge limited cross-examination on hearsay grounds); Munoz, 2003 WL 21373349, at \* 2.

For the foregoing reasons, the Second Department did not unreasonably reject Baxter's Sixth Amendment claim.

(f) Defect In The Indictment

Petitioner next claims that his Due Process and Equal Protection rights were violated when he was charged by a defective indictment. (Pet. at 6.) This claim is predicated on Baxter's assertion that the indictment "did not effectively charge the offense of Murder in the Second Degree" as to the England counts. (Ex. L at 8-9.) Petitioner posits that this defect deprived the trial court of jurisdiction over the matter. (Id. at 9.)

Habeas corpus generally "is not available to test the sufficiency of [an] indictment." Marcus v. Conway, No. 04 Civ. 0064, 2007 WL 1974305, at \*4 (S.D.N.Y.

29

July 5, 2007)(quoting United States ex rel Mintzer v. Dros, 403 F.2d 42, 43 (2d Cir. 1967)). However, a state indictment still must comport with basic constitutional standards. See Grant v. Connell, No. 06 CV. 4364, 2008 WL 834184, at *3 (S.D.N.Y. Mar. 27, 2008). An indictment is constitutionally sufficient so long as "it charges a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." United States v. Stavroulakis, 952 F.2d 686, 693 (2d Cir. 1992). Moreover, "defects in an indictment do not deprive a court of its power to adjudicate a case." United States v. Cotton, 535 U.S. 625, 630 (2002).

Here, petitioner's claim fails on two fronts. First, his assertion that the defective indictment deprived the trial court of jurisdiction is defeated by Cotton, 535 U.S. at 630. Second, the indictment tracked the language of New York's murder statute and specified the approximate time as well as location of the England homicide. (Ex. M.) See N.Y. PENAL LAW § 125.25. As such, the indictment did not fall below the minimal constitutional threshold. See De Vonish v. Keane, 19 F.3d 107, 109 (2d Cir. 1994)(indictment was constitutionally sufficient since it "tracked the language of the New York burglary statute, and specified the approximate time and place of the alleged crime"). Accordingly, petitioner's defective indictment claim fails to state a cognizable basis for habeas relief.

(g) Defects In The Grand Jury Proceedings

In a related claim, Baxter asserts that the prosecutor's actions "in the grand jury impaired the integrity of the proceeding rendering the accusatory instrument voted upon defective." (Pet. at 6; Ex. L at 14.) This claim is based on the theory that the prosecutor

30

knowingly allowed the medical examiner to misstate England's cause of death in the grand jury. (Id. at 15-16.) Baxter also contends that the prosecutor provided the grand jury with inadequate legal instructions on the elements of homicide. (Id. at 16.)

Following a guilty verdict rendered by a petit jury, alleged deficiencies in a state grand jury proceeding are not cognizable on habeas review. See Lopez v. Riley, 865 F.2d 30, 31 (2d Cir. 1989); Dunn v. Sears, 561 F. Supp. 2d 444, 453 (S.D.N.Y. 2008). Thus, after a conviction, habeas relief is unavailable for claims of prosecutorial misconduct in the grand jury. See Campbell v. Poole, 555 F. Supp. 2d 345, 367-68 (W.D.N.Y. 2008); Evans v. Poole, No. 05 Civ. 5951, 2005 WL 2847769, at *1 (S.D.N.Y. Oct. 31, 2005). Likewise, in the aftermath of a guilty verdict, federal courts will not assess claims that the prosecutor improperly instructed the grand jury on the applicable law. See Lopez, 865 F.2d at 31. Since Baxter was convicted by a petit jury, I respectfully recommend the dismissal of this portion of Baxter's petition.

(h) Ineffective Assistance of Trial And Appellate Counsel

Baxter's claims of ineffective assistance of trial and appellate counsel are analyzed under the rubric established in Strickland v. Washington, 466 U.S. 668 (1984). See Hemstreet v. Greiner, 491 F.3d 84, 89 (2d Cir. 2007); Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994)(Strickland applies to ineffective assistance of appellate counsel). Strickland created a two-part test that assesses: (1) whether counsel's performance was deficient; and (2) if prejudice resulted from the attorney's deficient performance. See Strickland, 466 U.S. at 687; Harrington v. Richter, 131 S. Ct. 770, 787 (2011); Gueits v. Kirkpatrick, 612 F.3d 118, 122 (2d Cir. 2010). In order to satisfy

the deficiency prong, petitioner must prove that, "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688.

The crux of the inquiry is whether the "attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." Harrington, 131 S. Ct. at 788. In conducting its analysis, the Court "must make every effort . . . to eliminate the distorting effects of hindsight, and indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound [ ] strategy." Bell v. Miller, 500 F.3d 149, 156 (2d Cir. 2007) (quoting Strickland, 466 U.S. at 689). In the context of an ineffective assistance of appellate counsel claim, petitioner cannot merely rely on the fact that their attorney "omitted a nonfrivolous argument." Mayo, 13 F.3d at 533. Rather, petitioner must show that counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Id.

Strickland's prejudice prong requires the petitioner to demonstrate, "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is defined as a, "probability sufficient to undermine confidence in the outcome." Id.

When the "highly deferential" standards created by Strickland and § 2254 act in tandem, habeas review is "doubly" deferential. Harrington, 131 S. Ct. at 788. The Supreme Court has explained that in the context of habeas review, "the question is not whether a federal court believes the state court's determination under the Strickland

32

standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." Knowles v. Mirzayance, 129 S. Ct. 1411, 1420 (2009)(quotation marks omitted). Thus, a state court's adjudication of an ineffective assistance of trial or appellate counsel claim is entitled to "substantial deference." Rosario v. Ercole, 601 F.3d 118, 123 (2d Cir. 2010).

(i) Ineffective Assistance Of Trial Counsel

Turning to Baxter's ineffective assistance of counsel claims that are not procedurally barred. These claims are premised on his attorney's failure to: (1) effectively advocate for severance of the indictment; (2) conduct independent testing of the government's DNA evidence; and (3) call Steven Kasler as a witness. I will consider each of these claims in turn.

(1) Severance Motion

Prior to trial, defense counsel submitted a motion to sever the counts of the indictment. (Ex. M at 12-13.) Baxter contends that the draftsmanship of this motion was deficient because it failed to stress that he, "had a strong need to refrain from testifying concerning the charges arising from one incident, and important testimony concerning the second incident." (Ex. L at 23.) Petitioner has not offered any proof, in the form of affidavits or otherwise, as to how he would have testified or why he could not offer such testimony in a joint trial. Thus, his claim is predicated on nothing more than a conclusory statement.

An unexplicated assertion of a need to testify in relation to certain counts in an indictment while remaining silent as to the other charges, presents an insufficient basis for concluding that counsel was ineffective. See Nash v. Ercole, No. 08 Civ. 5293, 2009

33

WL 2778247, at *15 (S.D.N.Y. Sept. 1, 2009). Cf. Sampson, 385 F.3d at 191

(unexplicated assertion of desire to testify on only one count of indictment is not enough

to require severance). Therefore, I respectfully recommend the dismissal of this portion

of Baxter's ineffective assistance of counsel claim.

    (2) Independent Testing Of The DNA Evidence

    At trial, the prosecution introduced a plethora of DNA evidence linking Baxter to

the Walker, England, and Gibbens homicides. Based on the central role DNA played in

this case, Baxter argues that his attorney's failure to request independent testing of the

forensic evidence constituted ineffective assistance of counsel. (Ex. L at 23.) Petitioner

contends that this omission was particularly grievous given that "earlier DNA testing of

the evidence ... indicated that with 99.9% accuracy the perpetrator of the crime was

someone other than the defendant." (Id. at 23-4.)

    Counsel's failure to conduct an adequate pre-trial investigation of the facts can

constitute ineffective assistance. See Strickland, 466 U.S. at 690-91; Gersten v.

Senkowski, 426 F.3d 588, 607 (2d Cir. 2005). However, "vague, conclusory, or

speculative [assertions] as to what evidence could have been produced by further

investigation" will not support a Strickland claim. Taylor v. Poole, No. 07 Civ. 6318, 2009

WL 2634724, at *14 (S.D.N.Y. Aug. 27, 2009)(collecting cases).

    In his submissions, petitioner fails to identify what additional evidence

independent DNA testing would have produced. Furthermore, Baxter has not proffered

any credible scientific basis for questioning the veracity of the prosecution's DNA

analysis. The only shred of evidence that petitioner cites in challenging the accuracy of

the DNA results is a criminal paternity test that inculpated Douglas Steadman in the

Gibbens murder. (Ex. L at 24; Tr. 2170.) However, criminal paternity tests are now disfavored because their results are not as accurate as the technology that ultimately linked petitioner to the three homicides. (Tr. 2231-33.) Employing the more advanced DNA analysis that connected Baxter to the homicides, authorities excluded Steadman as a contributor of the DNA left at the Gibbens crime scene. (Tr. 2232-33.) Finally, Baxter's own expert admitted that the DNA test that exculpated Steadman and linked petitioner to the crimes was "one of the best methods" for identifying an individual with the greatest degree of specificity. (Tr. 2566.) Thus, petitioner's bald assertion that his attorney was ineffective in failing to conduct independent DNA testing is insufficient to establish a Strickland violation.

Moreover, the duty to investigate only requires counsel "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Greiner v. Wells, 417 F.3d 305, 320-21 (2d Cir. 2005)(quoting Strickland, 466 U.S. at 691). Accordingly, "reasonably diligent counsel may draw a line when they have good reason to think that further investigation would be a waste." Rompilla v. Beard, 545 U.S. 374, 383 (2005). Two key facts lead to the conclusion that Baxter's attorney reasonably determined that independent DNA testing was unnecessary and wasteful. First, defense counsel retained an expert to review the prosecution's DNA evidence. (Tr. 2564-65.) Second, petitioner, as was discussed above, has failed to offer a credible scientific basis for questioning the accuracy of the DNA results. Viewed in this context, the decision to forego DNA testing was not the product of ineffective assistance.

35

For the foregoing reasons I respectfully recommend the dismissal of this branch of petitioner's <u>Strickland</u> claim.

(3) <u>Failure To Call Steven Kasler As A Witness</u>

Baxter claims that his counsel was ineffective in failing to call Steven Kasler as a witness at trial. (Ex. L at 27-28.) Prior to Baxter's arrest, Kasler confessed to the murder of Lisa Gibbens. (Ex. M at 7-8.) However, he ultimately recanted this confession. (<u>Id</u>. at 10.) Subsequent DNA testing also excluded Kasler as a possible suspect in the Gibbens murder. (<u>Id</u>. at 9.) Despite this evidence, Kasler was still transferred to Westchester County to ensure his availability at Baxter's trial. (<u>Id</u>. at 10-11.)

The decision to forego calling a witness is a matter of trial strategy that, if reasonably made, cannot form the basis of an ineffective assistance of counsel claim. <u>Eze v. Senkowski</u>, 321 F.3d 110, 129 (2d Cir. 2003); <u>United States v. Eyman</u>, 313 F.3d 741, 743 (2d Cir. 2002). In this case, defense counsel reasonably elected not to call Kasler as a witness. At the time of trial, Kasler had recanted his confession and was excluded as a possible suspect by DNA testing. Based on these facts, Baxter's attorney could have reasonably elected not to call Kasler or introduce any of his statements given the improbability of his involvement in the murders. That defense counsel's decision was a strategic calculation rather than an oversight is further evidenced by the fact that Kasler was listed as a potential defense witness and transferred to Westchester County for Baxter's trial. Since the defense's decision not to call Kasler was the result of sound trial strategy, I respectfully recommend the dismissal of this prong of petitioner's petition.

36

(ii) <u>Ineffective Assistance Of Appellate Counsel</u>

Finally, petitioner asserts that his appellate attorney was ineffective in failing to raise ineffective assistance of trial counsel claims on direct appeal. Specifically, Baxter contends that appellate counsel should have addressed his trial attorney's failure to: (1) challenge the indictment "as being jurisdictionally defective"; (2) adequately seek severance of the indictment; and (3) challenge the seating of a venireman on the jury. I will consider each of these claims in turn.

(1) <u>Jurisdictionally Defective Indictment</u>

Baxter claims that his trial counsel ineffectively challenged the government's defective indictment. (Ex. L at 22; Ex. R at 5.) The purported defect in the indictment stemmed from the governments failure to present sufficient evidence of a material element of Murder in the Second Degree, namely that the cause of Patricia England's death was homicide. (Ex. R at 4-5.) As a corollary, Baxter argues that his appellate counsel was equally ineffective for not addressing his trial attorney's failure to attack the sufficiency of the indictment. (Pet. at 7.)

This claim fails because it is refuted by the record. Prior to trial, Baxter's counsel filed a motion to dismiss the indictment based on the prosecution's failure to present *prima facie* evidence of the crimes charged. (Ex. M at 12.) Given this motion, it would have been frivolous for petitioner's appellate attorney to argue that trial counsel was ineffective for failing to challenge the purportedly defective indictment. As such, appellate counsel's performance was not objectively unreasonable. <u>Mayo</u>, 13 F.3d at 533 (petitioner must show that appellate counsel omitted obvious issues). Therefore, it

was reasonable for the Appellate Division to deny this branch of petitioner's *coram nobis* motion.

### (2) Severance Motion

Baxter contends that his appellate attorney's performance was ineffective because he did not address trial counsel's purported failure to file an adequate motion for severance of the indictment. (Pet. at 7.) Since, as was discussed above, Baxter's trial attorney was not constitutionally deficient in advocating for severance, appellate counsel's decision to forego the issue was not objectively unreasonable. Mayo, 13 F.3d at 533 (petitioner must show that appellate counsel omitted obvious issues). As such the Second Department did not unreasonably dismiss this prong of Baxter's *coram nobis* motion.

### (3) Failure To Challenge A Biased Juror

Finally, during voir dire juror Daniel Garbowit stated, "[in] regards to your question, that you said you think there were – where there is smoke there is fire, it just seems that you could feel that way or perhaps, you know you could feel that way because there is more than one situation [homicide] involved, to answer you honestly." (Tr. 753.) Petitioner contends that this statement demonstrates that Garbowit was incapable of serving as an impartial juror. (Ex. L at 24-25; Ex. R at 7-8.) Baxter argues that his attorney's failure to challenge a partial juror for cause constituted ineffective assistance of counsel. (Ex. L. at 26-27; Ex. R at 7-8.) Accordingly, petitioner reasons that his appellate counsel was ineffective for failing to address this issue. (Pet. at 7.)

An attorney's actions during voir dire are considered matters of trial strategy. Charlemagne v. Goord, No. 05 Civ. 9890, 2008 WL 2971768, at *27 (S.D.N.Y. June 30,

2008)(internal quotations and citations omitted). Actions or omissions that might be considered sound trial strategy do not constitute ineffective assistance of counsel. Henry v. Poole, 409 F.3d 48, 63 (2d Cir. 2005). By the time Garbowit was selected as a juror, defense counsel had attempted to excuse six veniremen for cause and exercised seventeen peremptory challenges. (Tr. 348, 537, 577-79, 758-765.) Counsel's active participation in voir dire coupled with his challenges to a number prospective jurors reveals that the decision not to exclude Garbowit was the product of sound trial strategy rather than ineffective assistance. See Figueroa v. Heath, No. 10-CV-0121, 2011 WL 1838781, at *11 (E.D.N.Y. May 13, 2011); Charlemagne, 2008 WL 2971768 at *27; Nova v. Ercole, No. 06 Civ. 562, 2007 WL 1280635, at *8 (S.D.N.Y. April 30, 2007).

Since trial counsel was not ineffective during voir dire, appellate counsel's failure to raise the issue on appeal was not objectively unreasonable. Mayo, 13 F.3d at 533 (petitioner must show that appellate counsel omitted obvious issues). Therefore, the Second Department did not err in dismissing this prong of Baxter's coram nobis motion.

## IV. CONCLUSION

For the foregoing reasons, I respectfully recommend that the instant petition for a writ of habeas corpus be denied in its entirety.[11]

## V. NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 8(b) of the Rules governing § 2254 proceedings, the parties shall have fourteen (14) days from the receipt of this Report to

---

[11] Attached to this Report and Recommendation are copies of all unpublished opinions and decisions available only in electronic form cited herein.  See Lebron v. Sanders, 557 F.3d 76, 78 (2d Cir. 2009).

serve and file written objections to this Report and Recommendation. If copies of this Report are served upon the parties by mail, the parties shall have seventeen (17) days from receipt of this Report to file and serve written objections. See Rule 12 of the Rules governing § 2254 proceedings; Fed. R. Civ. P. 6(d). Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Vincent L. Briccetti at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at said Courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered. See Caidor v. Onondaga County, 517 F.3d 601, 604 (2d Cir. 2008).

Requests for extensions of time to file objections must be made to The Honorable Vincent L. Briccetti and not to the undersigned.

Dated:      July 26 2011

         White Plains, New York


                    Respectfully submitted,



                    _____
                    GEORGE A. YANTHIS

                    UNITED STATES MAGISTRATE JUDGE

                              40